NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well
as formal revision before publication in the New Hampshire Reports. Readers are
requested to notify the Reporter, Supreme Court of New Hampshire, One Charles
Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that
corrections may be made before the opinion goes to press. Errors may be
reported by e-mail at the following address: reporter@courts.state.nh.us.
Opinions are available on the Internet by 9:00 a.m. on the morning of their
release. The direct address of the court’s home page is:
http://www.courts.state.nh.us/supreme.

 THE SUPREME COURT OF NEW HAMPSHIRE

 ___________________________

Hillsborough-northern judicial district
No. 2019-0012

 RED OAK APARTMENT HOMES, LLC

 v.

 STRATEGIS FLOOR & DÉCOR, INC. & a.

 Argued: March 4, 2020
 Opinion Issued: September 9, 2020

 Bossie, Wilson & Strasburger, PLLC, of Manchester (Jon N. Strasburger
on the brief and orally), for the plaintiff.

 Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Roy W. Tilsley,
Jr. and Brett W. Allard on the brief, and Mr. Allard orally), for defendant
Strategis Floor & Décor, Inc.

 BASSETT, J. The plaintiff, Red Oak Apartment Homes, LLC, appeals a
decision of the Superior Court (Messer, J.) granting a motion to dismiss filed by
defendant Strategis Floor & Décor, Inc. (Strategis), and dismissing the
plaintiff’s claims against Strategis on the grounds that the court lacked
personal jurisdiction. We affirm.

 We assume the following facts, as alleged in the plaintiff’s amended
complaint, to be true. The plaintiff is a New Hampshire limited liability
company with a registered business address in Manchester. It owns
approximately 1,500 residential units throughout the state. The plaintiff
contracted with Holmes Carpet Center, LLC (Holmes), a New Hampshire
business, to install plank-style flooring in approximately 195 of its apartment
units. Holmes recommended vinyl plank flooring that it represented would
withstand rental use for many years. The majority of the floors installed by
Holmes consisted of Versaclic LVT vinyl plank flooring manufactured by
Strategis.1 The flooring was sold with a fifty-year warranty for residential
applications.

 Shortly after the flooring was installed, the plaintiff’s residents and
employees began noticing that the flooring was shifting and large gaps were
appearing between the flooring planks, near walls, and in doorway thresholds.
After being contacted by the plaintiff, Holmes performed repair work on the
flooring in two of the affected units. The plaintiff received invoices from Holmes
for those units. Because the original flooring installation was defective, the
plaintiff requested that the additional units be repaired by Holmes at no cost.
Holmes indicated to the plaintiff that the remaining units would be repaired,
but, to date, no further repairs have been made.

 On November 11, 2016, the plaintiff filed a complaint in the trial court
against Holmes, alleging breach of contract and violation of the Consumer
Protection Act (CPA). Subsequently, on October 18, 2017, the plaintiff filed an
amended complaint, which added the following defendants: (1) N.R.F.
Distributors, Inc. (N.R.F.), a flooring distributor that sold the flooring at issue
to Holmes and, although a foreign corporation, is registered to do business in
New Hampshire and has a registered business address in Augusta, Maine; (2)
eight other defendants, seven of whom were subcontractors hired by Holmes to
perform the flooring installation at the plaintiff’s properties; and (3) Strategis, a
foreign corporation with a principal business address in Quebec, Canada, that
marketed and sold the flooring to N.R.F.

 In its amended complaint, the plaintiff asserted claims against Strategis
for violation of the CPA and breach of express and implied warranties.
Specifically, the plaintiff alleged that Strategis violated the CPA by engaging in
deceptive business practices, i.e., marketing the flooring as being durable with
a functional locking system that would provide years of use under normal
conditions.

 On March 13, 2018, Strategis filed a motion to dismiss for lack of
personal jurisdiction, supported by an affidavit from its president and founder.
Strategis stated that it imports flooring into Canada from Asia, which it then
sells to distributors that sell the flooring to retailers that, ultimately, sell it to

1
 Although the plaintiff’s amended complaint alleges that the flooring at issue was manufactured
by Strategis, and that Strategis is “engaged in the flooring manufacturing business,” the plaintiff
does not base its claims against Strategis on defective manufacturing.

 2
consumers. Strategis averred that it: (1) is not registered to do business in
New Hampshire; (2) does not have a registered agent in the state; (3) does not
have any employees, officers, directors, or shareholders in the state; (4) does
not have any offices or places of business in the state; (5) does not own assets
in the state; (6) does not market or advertise its business in the state; and (7)
does not solicit other business in the state. Based on the foregoing, Strategis
argued that the court lacked both general and specific personal jurisdiction
over it.

 In an objection to Strategis’ motion to dismiss, the plaintiff contended
that the court had specific personal jurisdiction over Strategis given its forum-
based contacts with New Hampshire. According to the plaintiff, Strategis had
purposefully availed itself of the protection of New Hampshire’s laws by selling
its flooring to N.R.F., which is known to service hundreds of flooring retailers in
New Hampshire, and by including a written warranty in flooring shipments
that ultimately reached customers in New Hampshire.

 The trial court granted the motion. The court concluded that, although
Strategis’ flooring and the accompanying warranty were placed in the stream of
commerce, they were not purposefully directed at customers in New
Hampshire. The plaintiff’s motion to reconsider was denied, and this appeal
followed.

 When, as in this case, a trial court rules on a motion to dismiss for lack
of personal jurisdiction without holding an evidentiary hearing, it employs a
prima facie standard. State v. N. Atlantic Ref. Ltd., 160 N.H. 275, 280 (2010).
“Under the prima facie standard, the inquiry is whether the plaintiff . . . has
proffered evidence which, if credited, is sufficient to support findings of all facts
essential to personal jurisdiction.” Id. at 280-81 (quotation omitted). “To make
a prima facie showing, the plaintiff ordinarily cannot rest upon the pleadings,
but is obliged to adduce evidence of specific facts.” Id. at 281 (quotation
omitted). The trial court’s role “is not as a factfinder, but as a data collector.”
Id. (quotation omitted). “That is to say, the court must accept the plaintiff’s . . .
proffers as true for the purpose of determining the adequacy of the prima facie
jurisdictional showing.” Id. (quotation and ellipsis omitted). “Additionally, the
court must construe the plaintiff’s evidentiary proffers in the light most
congenial to the plaintiff’s jurisdictional claim.” Id. (quotation omitted). Facts
put forward by Strategis may be considered only if they are uncontradicted by
the plaintiff’s submissions. Id. We review the trial court’s decision de novo.
Id. at 280.

 To determine whether the plaintiff has met its burden, we examine
whether our long-arm statute authorizes such jurisdiction, and whether the
requirements of the Federal Due Process Clause are satisfied. Id. at 281.
Because we construe the long-arm statute as permitting the exercise of
jurisdiction to the extent permissible under the Federal Due Process Clause,

 3
our primary analysis relates to due process. Id. Pursuant to the Federal Due
Process Clause, a court may exercise personal jurisdiction over a nonresident
defendant if the defendant has minimum contacts with the forum, such that
the maintenance of the suit does not offend traditional notions of fair play and
substantial justice. Id.

 Personal jurisdiction can be either general, i.e., the defendant’s contacts
with New Hampshire are “continuous or systematic,” or specific, i.e., “the cause
of action arises out of or relates to the defendant’s forum-based contacts.” Id.
The parties agree that only specific jurisdiction is at issue here. To decide
whether the exercise of specific personal jurisdiction comports with due
process, we examine whether: (1) the contacts relate to the cause of action; (2)
the defendant has purposefully availed itself of the protection of New
Hampshire’s laws; and (3) it would be fair and reasonable to require Strategis
to defend the suit in New Hampshire. Id. at 282. All three factors must be
satisfied in order for the exercise of jurisdiction to be constitutional, and each
factor must be evaluated on a case-by-case basis. Id.

 Prong two of the test is at issue in this appeal. In order for prong two to
be satisfied, a plaintiff must allege facts which demonstrate that the
defendant’s in-state contacts represent a purposeful availment of the privilege
of conducting activities in the forum state, thereby invoking the benefits and
protection of that state’s laws and making the defendant’s involuntary presence
before the state’s courts foreseeable. Fellows v. Colburn, 162 N.H. 685, 694
(2011). Purposeful availment requires both foreseeability and voluntariness.
Id. Voluntariness requires that each of the defendant’s contacts with the
forum state proximately result from the defendant’s actions. Id. Foreseeability
requires that the contacts also must be of a nature that the defendant could
reasonably anticipate being haled into court there. Id. “This requirement
ensures ‘the orderly administration of the laws,’ and, thus, ‘gives a degree of
predictability to the legal system that allows potential defendants to structure
their primary conduct with some minimum assurance as to where that conduct
will and will not render them liable to suit.’” Id. (quoting World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

 In products liability cases, New Hampshire employs the “stream of
commerce plus” theory established by the United States Supreme Court in
Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102 (1987). N. Atlantic
Ref. Ltd., 160 N.H. at 284. Under this theory, “placement of a product into the
stream of commerce, without more, is not an act of the defendant purposefully
directed toward the forum State.” Asahi, 480 U.S. at 112 (O’Connor, J.,
plurality opinion). Instead, there must be some additional conduct on the part
of the defendant indicating an “intent or purpose to serve the market in the
forum State.” Id. Examples of such conduct include “designing the product for
the market in the forum State, advertising in the forum State, establishing
channels for providing regular advice to customers in the forum State, or

 4
marketing the product through a distributor who has agreed to serve as the
sales agent in the forum State.” Id. A defendant’s awareness that “the stream
of commerce may or will sweep the product into the forum State does not
convert the mere act of placing the product into the stream into an act
purposefully directed towards the forum State.” Id.

 The plaintiff argues that the following actions taken by Strategis
constituted purposeful availment of the protection of New Hampshire’s laws:
(1) contacting N.R.F., the largest flooring distributor in New England that
services hundreds of flooring retailers in New Hampshire, to establish a
distribution relationship; (2) selling approximately 31,000 cartons of flooring to
customers in New Hampshire through N.R.F.; (3) developing print advertising
to be marketed in the New England area, including New Hampshire; and (4)
providing a written warranty to the end user in each carton of flooring it sold,
including flooring shipped to New Hampshire. We conclude that none of these
actions, either separately or jointly, constitutes purposeful availment sufficient
for the court to exercise personal jurisdiction.

 The plaintiff argues that this case is analogous to State v. North Atlantic
Refining Ltd., in which we determined that the defendant’s production of
reformulated gasoline to comply with New Hampshire standards amounted to
purposeful availment. See N. Atlantic Ref. Ltd., 160 N.H. at 285. Strategis
counters that North Atlantic is distinguishable on its facts, and argues that
this case is akin to Vermont Wholesale Building Products v. J.W. Jones
Lumber Co., 154 N.H. 625 (2006), in which we adopted the stream of
commerce plus analysis set forth in Asahi, and stated that a “defendant’s
awareness that its product may or will reach the forum state is not sufficient to
establish that the defendant purposefully availed itself of the protection of that
state’s laws.” Vt. Wholesale Bldg. Prods., 154 N.H. at 636. We agree with
Strategis.

 In Vermont Wholesale, the defendant, a North Carolina corporation,
manufactured and sold flooring to Vermont Wholesale, a distributor operating
in four states, including New Hampshire. Id. at 627. Vermont Wholesale then
sold the flooring to a retail store located in New Hampshire, which sold it to a
contractor. Id. The contractor ultimately installed the flooring in a customer’s
home in New Hampshire. Id. The customer brought suit against the
contractor, alleging that the flooring was defective. Id. The contractor then
filed a third-party action against Vermont Wholesale, which in turn brought
actions against the defendant and the New Hampshire retailer. Id.

 Like Strategis, the defendant in Vermont Wholesale was not registered to
do business in New Hampshire, did not have an agent registered in New
Hampshire, did not maintain an office in New Hampshire, and did not own any
assets in New Hampshire. Id. Importantly, the defendant in Vermont
Wholesale did not deal directly with any distributors located in New

 5
Hampshire, nor did it specifically advertise to, or solicit business from,
customers in New Hampshire. Id. Although the defendant in Vermont
Wholesale was aware that its flooring was distributed in a four-state region
that included New Hampshire, id., we determined that mere awareness that the
product would reach customers in New Hampshire was not sufficient to
establish purposeful availment. Id. at 636-37.

 In contrast, the defendant in North Atlantic, an oil refiner, supplied a
special blend of gasoline to New Hampshire as part of a “reformulated gasoline
program” established by Congress to reduce vehicle-related air pollution. N.
Atlantic Ref. Ltd., 160 N.H. at 277-78. Four counties in New Hampshire
participated in the reformulated gas program. Id. at 278. The defendant
“specifically produced and designed” its product for the northeastern United
States market, which included New Hampshire. Id. at 285. This production
and design involved blending gasoline according to various protocols and
specifications to result in reformulated gas. Id. We concluded that the
production of such a specialized product for market in a particular geographic
area that included New Hampshire, along with the defendant’s profiting from
that production, satisfied the stream of commerce plus analysis. Id.

 Unlike the defendant in North Atlantic, Strategis has not “designed its
product in anticipation of sales” in New Hampshire. Asahi, 480 U.S. at 113.
Instead, Strategis’ contacts with New Hampshire resemble those of the
defendant in Vermont Wholesale. Although Strategis, through its distribution
relationship with N.R.F., may have been aware that its product would reach
New Hampshire, “mere awareness” is not sufficient. Id. at 105, 112; Vt.
Wholesale Bldg. Prods., 154 N.H. at 636. The plaintiff must allege voluntary
acts on the part of the defendant that would cause the defendant to reasonably
foresee being haled into court in New Hampshire. See Fellows, 162 N.H. at
694. Those voluntary acts are not present here. The plaintiff has not alleged
that Strategis designed its products specifically for distribution in the New
Hampshire market, nor that Strategis contacted N.R.F. with the specific goal of
marketing and selling its flooring in New Hampshire.

 Next, the plaintiff argues that it established that Strategis could have
reasonably foreseen being haled into court in New Hampshire because N.R.F.
represented that, during a five-year period, it sold approximately 31,000
cartons of Strategis’ flooring to customers in New Hampshire, including 18,000
cartons of the vinyl plank flooring at issue. We agree with the trial court,
however, that these sales figures, without more information to provide
necessary context, are insufficient to establish personal jurisdiction. See
Metcalf v. Lawson, 148 N.H. 35, 37 (2002) (stating that a “plaintiff must offer
affirmative proof to substantiate facts that relate to personal jurisdiction”). For
example, the plaintiff presented no evidence as to the share of N.R.F.’s total
sales represented by the sale of Strategis’ products in New Hampshire; nor did
it offer evidence establishing the volume of Strategis’ flooring sold in New

 6
Hampshire over the five-year period as compared to the volume of Strategis’
flooring sold to customers in New England, the northeast or nationwide over
the same period; nor did the plaintiff offer evidence as to the volume of
Strategis’ flooring sold in New Hampshire or elsewhere on a year-by-year basis.
All of that information would be material to the purposeful availment analysis.
Without that context, we are unable to conclude that Strategis could have
reasonably foreseen being haled into a New Hampshire court.

 The plaintiff also points to two advertising flyers distributed by Strategis
across the United States in support of its argument that the stream of
commerce plus analysis has been satisfied. These flyers, however, are
insufficient to establish a prima facie case of personal jurisdiction. First, the
plaintiff does not allege facts which demonstrate that the flyers reached New
Hampshire. Second, although the flyers direct customers in certain states to
contact specific distributors, New Hampshire is not one of those states.
Instead, the flyers direct customers in the “Northeast” to contact N.R.F.
Because the flyers neither identify a New Hampshire agent, nor specifically
target New Hampshire customers, they fail to establish Strategis’ purposeful
availment of the protection of New Hampshire’s laws.

 Finally, the plaintiff argues that Strategis’ inclusion of a written limited
50-year warranty in its flooring shipments satisfies the stream of commerce
plus theory. However, we agree with the trial court that the warranty, like the
flooring itself, merely entered the stream of commerce, and, therefore, the
presence of the written warranty in the shipments is not sufficient to
demonstrate that Strategis reasonably could have foreseen being haled into
court in New Hampshire. The plaintiff has failed to establish that Strategis,
through its in-state contacts, purposefully availed itself of the protection of New
Hampshire’s laws. Accordingly, we hold that the plus requirement of the
stream of commerce plus analysis has not been met.

 We note that our conclusion is in accord with the reasoning and holdings
of courts in other states that have applied the stream of commerce plus theory.
Compare State v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726, 763
(Tenn. 2013) (determining that the plus requirement was not satisfied where
arrival of the defendant’s cigarettes in Tennessee “was almost wholly
attributable to the initiative” of another party); Frankenfeld v. Crompton Corp.,
697 N.W.2d 378, 385-87 (S.D. 2005) (concluding that the plus requirement
was not satisfied where the defendant’s chemicals entered the forum state
through their inclusion in tires by another party), with Ford Motor Co. v. Mont.
Eighth Jud. Dist. Court, 443 P.3d 407, 414 (Mont. 2019) (determining that the
plus requirement was satisfied where the defendant, among other things,
advertised in Montana, was registered to do business in Montana, operated
subsidiary companies in Montana, and had 36 dealerships in Montana), cert.

 7
granted, 140 S. Ct. 917 (2020); Spir Star AG v. Kimich, 310 S.W.3d 868, 875-
78 (Tex. 2010) (concluding that the plus requirement was satisfied where the
defendant specifically targeted Houston’s market).

 Given our conclusion that the second prong of the stream of commerce
plus analysis has not been satisfied, we need not address the plaintiff’s
remaining arguments. We affirm the decision of the trial court dismissing the
plaintiff’s suit against Strategis for lack of personal jurisdiction.

 Affirmed.

 DONOVAN, J., concurred; TUCKER and IGNATIUS, JJ., superior court
justices, specially assigned under RSA 490:3, concurred; HANTZ MARCONI, J.,
dissented.

 HANTZ MARCONI, J., dissenting. I respectfully dissent because, in my
view, the solicitation by Strategis Floor & Décor, Inc. (Strategis) of a
distribution agreement with N.R.F. Distributors, Inc. (N.R.F.), coupled with
Strategis’ advertisements instructing potential customers located in the
“Northeast” to “Contact your NRF Representative,” is sufficient to establish
purposeful availment under the “stream of commerce plus” theory. See Asahi
Metal Industry Co. v. Superior Court, 480 U.S. 102, 108-13 (1987) (O’Connor,
J., plurality opinion).

 As the majority explains, only prong two of the minimum contacts test is
at issue in this appeal. “To satisfy the second requirement, the defendant’s in-
state contacts must represent a purposeful availment of the privilege of
conducting activities in the forum state, thereby invoking the benefits and
protection of that state’s laws and making the defendant’s involuntary presence
before the state’s courts foreseeable.” State v. N. Atlantic Ref. Ltd., 160 N.H.
275, 283-84 (2010). Purposeful availment requires both foreseeability and
voluntariness. Id. at 284. “Voluntariness requires that each of the defendant’s
contacts with the forum state proximately result from the defendant’s actions.”
Id. “Foreseeability requires that the contacts also must be of a nature that the
defendant could reasonably anticipate being haled into court there.” Id.

 Under the “stream of commerce plus” theory, adopted by this court in
North Atlantic, 160 N.H. at 284, merely placing a product into the stream of
commerce with the awareness that it might reach the forum state is not
enough to establish purposeful availment. Asahi, 480 U.S. at 112 (O’Connor,
J., plurality opinion); Vt. Wholesale Bldg. Prods. v. J.W. Jones Lumber Co., 154
N.H. 625, 636 (2006). However, purposeful availment may be shown through
conduct of the defendant indicating “an intent or purpose to serve the market
in the forum State.” Asahi, 480 U.S. at 112 (O’Connor, J., plurality opinion).
Examples of such conduct include “designing the product for the market in the
forum State, advertising in the forum State, establishing channels for providing

 8
regular advice to customers in the forum State, or marketing the product
through a distributor who has agreed to serve as the sales agent in the forum
State.” Id.

 In the instant case, N.R.F. is a flooring distributor with a registered
business address in Augusta, Maine, and is also registered to do business in
New Hampshire. Strategis’ vice president contacted N.R.F. to establish an
agreement in which N.R.F. would “distribute [Strategis’] products in NRF’s
distribution area.” Further, the record includes two advertisements distributed
by Strategis, both of which specifically target customers in, among other
locations,2 the “Northeast,” which necessarily includes New Hampshire. See N.
Atlantic Ref. Ltd., 160 N.H. at 285 (primary market for defendant’s product was
“the northeastern United States, which necessarily includes New Hampshire”).
The advertisements direct potential customers in the northeast to “Contact
your NRF Representative.” Over a period of five years following the formation of
their relationship, N.R.F. sold approximately 31,000 cartons of flooring in New
Hampshire that was manufactured or marketed by Strategis.

 Strategis’ conduct in this case is an example of “marketing the product
through a distributor who has agreed to serve as the sales agent in the forum
State.” Asahi, 480 U.S. at 112 (O’Connor, J., plurality opinion); see Tobin v.
Astra Pharmaceutical Products, Inc., 993 F.2d 528, 544 (6th Cir. 1993)
(holding that defendant company purposefully availed itself of the privilege of
conducting business in all states when it licensed another company to
distribute its drug in all fifty states). In this case, unlike Vermont Wholesale,
upon which the majority primarily relies, Strategis initiated efforts to establish
a distribution agreement with a New England based distributor registered to do
business in New Hampshire, and advertised to customers in a geographic area
that necessarily included New Hampshire. In my opinion, Strategis’ conduct
goes beyond passive awareness that its product would likely reach New
Hampshire, see Vt. Wholesale Bldg. Prods., 154 N.H. at 636-37, and instead
indicates “an intent or purpose to serve the market in [New Hampshire].”
Asahi, 480 U.S. at 112 (O’Connor, J., plurality opinion).

 Additionally, Strategis provided express warranties in each carton of
flooring sold to its customers, including customers in New Hampshire. I agree
with the majority that simply placing an express warranty into the stream of
commerce with the awareness that the product to which it is attached might
reach the forum state is not, by itself, enough to satisfy the stream of
commerce plus theory. However, I do not believe that makes the warranty
irrelevant to the purposeful availment analysis. In my view, Strategis’ inclusion
of a warranty with products that are being shipped to New Hampshire, a

2
 Strategis’ advertisements are also directed to potential customers located in “Washington DC”;
“Michigan”; the “Midwest”; the “Upper Midwest”; and “Kansas”; and customers are instructed to
contact a particular representative for service depending on their geographic location.

 9
market that Strategis has purposely solicited and intends to serve, creates
“continuing relationships and obligations with [the] citizens of [New
Hampshire],” and makes it foreseeable that Strategis might be “subject to
regulation and sanctions in [New Hampshire] for the consequences of [its]
activities.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)
(quotation omitted).

 In sum, tens of thousands of cartons of Strategis’ product were shipped
into New Hampshire over a five-year period as a proximate result of voluntary
conduct engaged in by Strategis for the purpose of serving the New Hampshire
market, which made it foreseeable that Strategis might be haled into the state’s
courts. See Knox v. MetalForming, Inc., 914 F.3d 685, 691-92 (1st Cir. 2019)
(explaining that “Supreme Court precedent does not establish specific targeting
of a forum as the only means of showing that the purposeful availment test has
been met,” and that, “[d]epending on the facts, a defendant’s ‘regular flow or
regular course of sale in the forum,’” or evidence of “an intent to serve the
forum,” may make jurisdiction in the forum state foreseeable to the defendant
(quotations omitted)). Accordingly, I would hold that Strategis purposefully
availed itself of the privilege of conducting activities in New Hampshire, and I
respectfully dissent.

 10